IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jimmy R. Taylor,            )<br>                             )<br>            Petitioner,  )<br>    v.                      )<br>                             )<br>                             )<br>John R. Pate, Warden,        )<br>                             )<br>            Respondent.  )<br>_____) | C/A No. 4:15-3255-BHH<br><br><br><br>**ORDER AND OPINION** |

Petitioner, Jimmy R. Pate, ("Petitioner"), proceeding *pro se,* filed this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(d), D.S.C., the action was referred to United States Magistrate Judge Thomas E. Rogers, III, for pretrial handling and a Report and Recommendation ("Report"). Magistrate Judge Rogers recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's § 2254 petition be dismissed. (ECF No. 25.) The Report sets forth in detail the relevant facts and standards of law on this matter and the Court incorporates them without recitation.

## **BACKGROUND**

Petitioner filed this action against Respondent alleging ineffective assistance of counsel. On May 5, 2016, the Magistrate Judge issued a Report. On August 15, 2016, Petitioner filed his objections (ECF No. 41), to which Respondent replied on August 22, 2016 (ECF No. 43). Having carefully reviewed the record, the Court finds that the Magistrate Judge has accurately and adequately summarized the disputed and

1

undisputed facts relevant to this action. The Court has reviewed the objections, but finds them to be without merit. Therefore, it will enter judgment accordingly.[1]

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

In reviewing these pleadings, the Court is mindful of Petitioner's *pro se* status. When dealing with a *pro se* litigant, the Court is charged with liberal construction of the pleadings. *See, e.g., De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003). The requirement of a liberal construction does not mean, however, that the Court can ignore a petitioner's clear failure to allege facts that set forth a cognizable claim, or that the

---

[1] As always, the Court says only what is necessary to address Petitioner's objections against the already meaningful backdrop of a thorough Report of the Magistrate Judge. Comprehensive recitation of law and fact exists there.

Court must assume the existence of a genuine issue of material fact where none exists. *See United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012).

## **DISCUSSION**

Petitioner's objections, while lengthy, are confusing—Petitioner mostly quotes case law and testimony from his trial without any accompanying substantive argument. (ECF No. 41.) However, in an abundance of caution, the Court reviews the findings of the Magistrate Judge *de novo*.

The Magistrate Judge found that the one ground raised in the habeas petition is procedurally barred and the Court agrees. The Magistrate Judge provided a detailed procedural history of Petitioner's actions for state post-conviction relief ("PCR") and subsequent § 2254 petition and correctly found that the allegation raised in Ground One was not ruled upon by the PCR court. (ECF No. 25 at 2–15.) Ground One alleges that trial counsel was ineffective for failing to object to or supplement the State's "recitation of a stipulation" reached in-chambers. (ECF No. 1 at 5.) Although Petitioner raised this claim in the PCR appeal, because it was not specifically ruled upon by the PCR judge, it was unpreserved for PCR appellate purposes and remains unpreserved for habeas review. *See, e.g., Green v. Bush*, No. CIV.A. 2:14-2405-MGL, 2014 WL 6983352, at *2 (D.S.C. Dec. 10, 2014) (finding a claim procedurally defaulted because, "[a]lthough Petitioner raised this ground in his initial PCR application, the PCR court failed to rule on the issue"); *Simpson v. Moore*, 627 S.E.2d 701, 708 n.3 (S.C. 2006) (stating that an issue not addressed by the PCR court is not preserved for review on appeal); *State v. Moore*, 593 S.E.2d 608 (S.C. 2004) (holding an issue must be raised to and ruled upon by the trial court to be preserved for appellate review).

The Magistrate Judge further correctly found that Ground One fails on the merits, regardless of the procedural bar. (ECF No. 25 at 13–14, n.2 (finding "Petitioner fails to demonstrate that the underlying ineffective assistance of counsel claim is substantial").) The "stipulation" in this claim refers to an agreement reached between Petitioner's counsel and the solicitor's office while in the trial judge's chambers. At the PCR hearing, Petitioner testified that he understood the agreement to be that "[n]o expert witness would be called that will state what accident—in order to bifurcate or to tell the difference between which accident may have killed the Neelys." (ECF No. 12-3 at 121.) Although Petitioner asserts that trial counsel failed to object when the solicitor purportedly violated this agreement, the record indicates otherwise.

At the PCR hearing, trial counsel explained his understanding of the agreement reached in chambers. By way of background, he testified that once he presented the State with the defense theory that the second impact killed the Neeleys, the State informed him that ". . . they were going to have their accident reconstructionist who was basically just a trooper . . . [t]hey were not going to have him testify that the first collision as opposed to the second collision caused the death of the Neeleys." (ECF No. 12-3 at 183.) In chambers, trial counsel asked the Court for a continuance so that he could bring in an expert to do a momentum study. Instead of granting a continuance, trial counsel testified, the trial judge "allowed us to move forward by suggesting that [the solicitor's] expert would not testify towards which accident caused the death, basically caused the death of the Neeleys. [However,] once we were in court, despite my objection, [the trial judge] allowed testimony that basically said which accident caused the death of the Neeleys." (*Id.*)

4

The trial transcript reveals that trial counsel conducted an *in camera* cross-examination of the solicitor's expert, Lieutenant Ricky Dixon, to determine the scope of his testimony. (ECF No. 12-1 at 323–324.) After cross-examining Lt. Dixon, trial counsel objected to his testimony regarding the reconstruction of the collision. (*Id.* at 326–328.) Trial counsel argued that such testimony contradicted the agreement he had previously reached with the solicitor's office. (*Id.* at 327–328.) Specifically, trial counsel argued that the solicitor's office agreed they would not "bring that evidence" as to which car accident caused the Neeley's death. (*Id.* at 333–334.)

In response, the Solicitor argued that it was his understanding based on discussions with trial counsel that he "was not going to put a highway patrolman up there, ask them how are they going to die. I'm going to tell you right now I'm not even going to ask that question. . . . But you know, I don't want to necessarily go there because our—our opinion is under the law, of course, it doesn't matter under the law if you put somebody in that position, someone else kills them, they can still be found guilty of felony DUI." (*Id.* at 333.)

The trial judge ruled that she saw it as two issues. The judge stated, "the first issue is whether or not a MAIT (Multidisciplinary Accident Investigation Team) team member could testify regarding which of the accidents, given the area of impact, would have most probably moved the bodies in which direction." (*Id.* at 336.) The judge further found that "the other issue is an issue of which of the accidents cause the death." (*Id.*) The judge ruled on counsel's objection, finding that Lt. Dixon, a member of the MAIT unit, could testify whether or not the direction of the victims' bodies was consistent with

or inconsistent with a frontal or side impact but could not ask any medical conclusions such as what caused the death. (*Id.* at 336–337.)

Accordingly, at trial, the solicitor asked Lt. Dixon in his direct examination, "Lieutenant, in your expert opinion what caused Ms. Neeley to go through the front windshield" of the Ford Escort? (*Id.* at 339.) Lt. Dixon responded "[t]he frontal collision with the initial collision with Mr. Taylor's Trail Blazer." (*Id.*) While trial counsel did not object at this particular moment, the record clearly shows that he previously objected outside the presence of the jury and vigorously argued that this type of testimony violated the agreement and should be excluded. (*See id.* at 326–336.) The trial judge, however, essentially overruled his objection and instead limited the scope of Lt. Dixon's testimony.

As the Magistrate Judge noted, Petitioner argued on direct appeal that "the trial court erred in admitting the testimony of the State's expert witness after the State allegedly violated a pre-trial agreement concerning the subject of the expert testimony." (ECF No. 12-3 at 66.) The South Carolina Court of Appeals, however, affirmed the trial judge's decision to allow the expert testimony, citing the following authorities: *State v. Jamison*, 643 S.E.2d 700, 701 (S.C. Ct. App. 2007) ("The qualification of a witness as an expert and the admissibility of his or her testimony are matters left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of that discretion and prejudice to the opposing party."); *State v. Johnson*. 410 S.E.2d 547, 552–53 (S.C. 1991) (holding there is no reversible error where the defendant fails to demonstrate prejudice resulting from the violation of a pre-trial

6

agreement with the solicitor and the solicitor attempts in good faith to comply with the agreement).

Upon a thorough *de novo* review, the Court finds that Ground One is procedurally barred and, regardless, the claim fails on its merits. The Court cannot find that Petitioner's trial counsel rendered ineffective assistance in failing to object to or supplement the State's recitation of a stipulation reached in-chambers. To the contrary, the record reveals that counsel vigorously objected to the State's purported violation of the agreement. Further, counsel attempted to supplement Lt. Dixon's testimony with his own momentum study, but was denied a continuance by the trial judge. Thus, to the extent Petitioner argues the Magistrate Judge's findings are in error, this objection is overruled.

Finally, to the extent Petitioner's objection raises arguments outside the scope of the initial habeas petition, such claims are not properly before this Court. *See, e.g.*, *Jones v. McFadden*, No. 814-CV-04556-RMG-JDA, 2016 WL 825394, at *14 (D.S.C. Jan. 15, 2016), *report and recommendation adopted*, 2016 WL 827756 (D.S.C. Mar. 2, 2016) ("To the extent that Petitioner is attempting to raise new arguments in his response in opposition, new matters cannot be raised in a response in opposition to a motion for summary judgment, . . . and the Court will not address these arguments.") (citing *Temple v. Oconee County*, C/A No. 6:13–144–JFA–KFM, 2014 WL 4417702, at *13 (D.S.C. Sept. 8, 2014); *White v. Roche Biomedical Labs.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992)).

**CONCLUSION**

After a thorough *de novo* review of the Report, the record, and the applicable law, the Court finds that Petitioner's objections are without merit. Accordingly, for the reasons stated above and by the Magistrate Judge, the Court overrules Petitioner's objections and adopts the Report and incorporates it herein. It is therefore ORDERED that Respondent's motion for summary judgment (ECF No. 11) is GRANTED, and Petitioner's § 2254 petition is DISMISSED *with prejudice*.

CERTIFICATE OF APPEALABILITY

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . .only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability. . . shall indicate which specific issue or issues satisfy the showing required in paragraph (2).

28 U.S.C. § 2253 (c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims to be debatable or wrong and any dispositive procedural ruling by the Court to be likewise debatable. *See Miller-El v. Cockrell,* 537 U.S, 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F. 3d 676, 683 (4th Cir. 2011). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is DENIED.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

September 26, 2016
Greenville, South Carolina

*****

**NOTICE OF RIGHT TO APPEAL**

    The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure.